**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Leroy Roosevelt MACK, Defendant–**
**Appellant.**

No. 03–10204.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 11, 2004.

Filed March 30, 2004.

Mitchell Posin, Las Vegas, NV, for the Defendant–Appellant.

Mark A. Inciong, Assistant United States Attorney, Las Vegas, NV, for the Plaintiff–Appellee.

Appeal from the United States District Court for the District of Nevada; Roger L. Hunt and Philip M. Pro, District Judges, Presiding. D.C. No. CR–02–00076–PMP/RJJ.

Before: FERNANDEZ, HAWKINS, and THOMAS, Circuit Judges.

FERNANDEZ, Circuit Judge:

Leroy Roosevelt Mack appeals his conviction and sentence for distribution of cocaine base after a trial in which he represented himself. *See* 21 U.S.C. § 841(a)(1). Mack asserts that the district court erred when it truncated the trial proceeding by excluding him from the courtroom and then denying him the right to call witnesses and the right to present closing argument.[1] We agree and reverse.

---

1. He also raises questions about his sentenc-

ing. However, in light of our reversal of the

## BACKGROUND

■ Mack was indicted in March of 2000 for distribution of cocaine base. After successfully obtaining the removal of three attorneys in succession, Mack, at his own behest, was allowed to represent himself.[2] Asked if he wished to have standby counsel, Mack refused unless he could have appointed counsel of his choice—a person who was not on the court's standard appointment list. Thus, standby counsel was not appointed.[3] As matters developed, that was regrettable.

Mack's behavior at his long delayed trial, which finally commenced January 28, 2002, was obstreperous, contemptuous, and demonstrative of his unwillingness or inability to abide by directions from the district court. As the relatively short trial went forward, he became worse rather than better. On the third day, he started a firefight over the fact that the wife of one of the jurors was in the courtroom, and he essentially refused to accept the district court's determination that there was no impropriety. Worse than that, Mack, in disregard of the court's directions, surreptitiously held up a note which informed the juror that he knew of

the presence of the lady. That made the juror feel threatened, so the court felt that it must remove the juror from the panel. It directed Mack not to tell the other jurors the reason for the removal, and after a rather heated discussion, Mack agreed. He did so when the court warned him that if his shenanigans continued, he would be removed from the courtroom, his questioning of witnesses would cease,[4] and he would not be permitted to present argument to the jury.

Nevertheless, as soon as he got a chance, Mack began announcing the reason to the jury, and actually got it out before he was led away. The district court matched its actions to its words. Mack was taken from the courtroom, questioning of witnesses ceased, and Mack was precluded from presenting closing argument to the jury. The court also precluded the prosecution from presenting argument. Thus, the jury ultimately proceeded to its deliberations with no summing up by either side. The jury was, however, instructed on the law by the trial court,[5] and Mack was allowed to be present for that. The next day, the jury issued a guilty verdict; Mack was allowed to be present for that also. In due course, Mack made a

conviction, those issues are moot.

2. There is no claim that his decision to appear pro se was not knowing and voluntary. *See Faretta v. California,* 422 U.S. 806, 835–36, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). Of course, the fact that he was deficient in legal knowledge was not a basis for denying his right to self-representation. *See Godinez v. Moran,* 509 U.S. 389, 399–400, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993).

3. It is well settled that a defendant is not entitled to have a particular counsel appointed. *See Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 626, 109 S.Ct. 2646, 2652–53, 105 L.Ed.2d 528 (1989). Moreover, the appointment of standby or advisory counsel is in the discretion of the district court. *See United States v. Salemo,* 81 F.3d 1453,

1456 n. 2, 1457 (9th Cir.1996); *Locks v. Sumner,* 703 F.2d 403, 407–08 (9th Cir.1983); *United States v. Halbert,* 640 F.2d 1000, 1009 (9th Cir.1981). The court is not *required* to force counsel upon an unwilling defendant at the outset.

4. While not entirely clear, it may be that the court terminated questioning of witnesses forthwith, but we assume that it was more of a threat to do so at that point.

5. From the record it appears that the district court did not give Mack an opportunity to review the instructions before they were presented to the jury; indeed, Mack was told that those would be given whether he objected or not, and that he was to sit silently while the instructions were given.

motion for a new trial before a different judge.[6] *See* Fed.R.Crim.P. 33. That was denied, he was sentenced, and this appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

■ A new trial may be granted by the district court when "the interest of justice so requires." Fed.R.Crim.P. 33(a). We review "the denial of a motion for a new trial for an abuse of discretion." *United States v. Hursh*, 217 F.3d 761, 769 (9th Cir.2000) (citation omitted).

## DISCUSSION

■ Because of the unique posture of this case—a case where a pro se defendant was removed from representation, and the proceeding was truncated—we start with first principles. A properly conducted judicial proceeding is required by the demands of due process. *See* U.S. Const. amend. V. More particularly, a defendant is entitled to a "trial," and "to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." U.S. Const. amend. VI.

As the Constitution indicates, our notion of a trial is not just any old proceeding; it has its own roots deep in the history of our country. To start with, the proceeding must be conducted with a certain deliberative majesty that is far from a free-for-all or, for that matter, the hurly burly of an academic or political debate. As the Supreme Court has pointed out:

It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.

*Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970). That means that defendants are not permitted to seize control of the courtroom and when they threaten to do so:

No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like Allen: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.

*Id.* at 343–44, 90 S.Ct. at 1061. If that prevents a defendant from being present at some critical stage of his trial, so be it; he can forfeit that ancient right. *See id.* at 345–46, 90 S.Ct. at 1062; *Badger v. Cardwell*, 587 F.2d 968, 972–73 (9th Cir.1978). However, can that mean that a pro se defendant will also forfeit his right to be represented at trial?

■■ Well, we do know that a defendant can eschew his right to representation in the sense that he can decide to represent himself. That is, he may do so if he " 'knowingly and intelligently' " decides to forgo "the traditional benefits associated with the right to counsel." *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541

---

**6.** After Mack's conviction, Judge Hunt recused himself. Judge Pro heard the motion for a new trial and conducted the sentencing proceeding.

(citation omitted); *see also United States v. Bishop,* 291 F.3d 1100, 1114 (9th Cir. 2002). And, that intelligent waiver can even be made when the defendant is abysmally ignorant when it comes to " 'technical legal knowledge.' " *Godinez,* 509 U.S. at 399–400, 113 S.Ct. at 2687 (citation omitted); *see also United States v. Arlt,* 41 F.3d 516, 518 (9th Cir.1994). That does not mean that the defendant's right to self-representation overcomes the court's right to maintain order in the courtroom and conduct proceedings in a manner consonant with our trial traditions. *See McKaskle v. Wiggins,* 465 U.S. 168, 173, 104 S.Ct. 944, 948, 79 L.Ed.2d 122 (1984). As the Court said in *Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46:

> Moreover, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. Of course, a State may—even over objection by the accused—appoint a "standby counsel" to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary.
>
> The right of self-representation is not a license to abuse the dignity of the courtroom.

*Id.* (citations omitted).

We think that this points the way. A defendant does not forfeit his right to representation at trial when he acts out. He merely forfeits his right to represent himself in the proceeding. The courts of California have perceived as much. Thus, when faced with the kind of situation that confronted the district court in this case, a California trial judge excluded the pro se defendant from the courtroom. The California Court of Appeal concluded that "excluding him as a defendant representing himself was a fundamental error requiring reversal, because there was, then, no defense counsel present." *People v. Carroll,* 140 Cal.App.3d 135, 143, 189 Cal.Rptr. 327, 332 (1983); *cf. People v. El,* 102 Cal. App.4th 1047, 1050, 126 Cal.Rptr.2d 88, 90 (2002) (where there was standby counsel, who had not been told to take over, a very brief exclusion was alright).

■ In the case at hand, the district court did direct removal of Mack from the courtroom, which left nobody to represent him. True it is that it does not appear that anything of significance went on in Mack's absence, but when he was allowed to return, he was required to remain silent and was even told that no objections of his would have any effect whatsoever on the proceedings. In practical effect, he had been removed as his own counsel and nobody stepped in to fill the gap. While we do understand that the district court had to do something about Mack's obnoxious behavior, effectively leaving him without representation was still far from appropriate. But let us go on with our canvas of the elements of a trial as we know it.

The Sixth Amendment does not literally guarantee the right to present witnesses; it gives the right to compulsory process to obtain them. However, it is pellucid that the latter includes the former. *See Taylor v. Illinois,* 484 U.S. 400, 409, 108 S.Ct. 646, 653, 98 L.Ed.2d 798 (1988). In fact, "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Id.* at 408, 108 S.Ct. at 652 (citation omitted). As the Supreme Court put it at an earlier time:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). Naturally, that right can be limited and even relevant and reliable evidence can be excluded in proper circumstances. *See Alcala v. Woodford,* 334 F.3d 862, 877–78 (9th Cir.2003).

In this case, however, the termination of Mack's right to call and examine witnesses was simply part and parcel of the district court's decision that he could no longer proceed with his own defense. That is far from the delicate surgery which is sometimes permitted when calling of a witness threatens the health of the trial proceeding. We do not see how the district court's approach can be justified; it was error. Nor did the errors end there.

Another aspect of the district court's effective termination of Mack's representation of himself was its decision that no argument would be presented to the jury. Another part of our notion of a trial was thus excised.

It can hardly be doubted that a defendant has a right to closing argument. As the Supreme Court has put it:

There can be no doubt that closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial. Accordingly, it has universally been held that counsel for the defense has a right to make a closing summation to the jury, no matter how

strong the case for the prosecution may appear to the presiding judge.

*Herring v. New York,* 422 U.S. 853, 858, 95 S.Ct. 2550, 2553, 45 L.Ed.2d 593 (1975). As the Court explained:

It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt.

*Id.* at 862, 95 S.Ct. at 2555; *see also United States v. Miguel,* 338 F.3d 995, 1002 (9th Cir.2003); *United States v. Kellington,* 217 F.3d 1084, 1100 (9th Cir.2000); *Conde v. Henry,* 198 F.3d 734, 739 (9th Cir.1999).

That is not to say that the district court has no control whatsoever over closing arguments; it surely does. *See Herring,* 422 U.S. at 862, 95 S.Ct. at 2555. But in this case a careful limiting process did not take place. Rather, Mack was, as an aspect of termination of his self-representation, denied the right to conduct any closing argument at all. That, too, was inappropriate and was error.[7]

Do all of these departures from traditional trial procedures bring the results within that small universe of error called structural? Why, yes, they must. It is beyond doubt that Mack wound up deprived of counsel—himself or anyone else.

---

7. While the district court also evenhandedly deprived the government of its right to close, that does not really help matters. It just

made the "trial" even more unrecognizable through the lens of American jurisprudence.

Deprivation of counsel is a structural error. *See Bell v. Cone,* 535 U.S. 685, 695, 122 S.Ct. 1843, 1851, 152 L.Ed.2d 914 (2002). By extension, so is deprivation of the right to present closing argument. *Id.* at 696 n. 3, 122 S.Ct. at 1851 n. 3; *Miguel,* 338 F.3d at 1003; *Conde,* 198 F.3d at 741. We recognize that, standing alone, the district court's limitation of the right to call and examine particular witnesses would be reviewable for harmless error. *See, e.g., United States v. Alvarez–Farfan,* 338 F.3d 1043, 1046 (9th Cir.2003); *United States v. Seschillie,* 310 F.3d 1208, 1214 (9th Cir. 2002). However, we need not explore that because even if harmless error were applied here, the structural nature of the other errors would still not save this conviction for the government. At any rate, in this case the witness problem is of a piece with, and inseparable from, the essential denial of counsel. Whenever nobody is available to examine defense witnesses, their absence (exclusion) is almost assured. Thus, reversal is required.

## CONCLUSION

We sympathize with the district court because no judge should have to be afflicted with a Mack. Defendants cannot be allowed to manipulate and control the courtroom by the simple expedient of representing themselves. Nevertheless, if their self-representation is allowed to continue (or if it is terminated), a district court cannot eliminate important elements of a trial, no matter how vexed it becomes with a defendant's noisome nonsense.

Taken together, the district court's orders in this case created a proceeding in which a defendant was deprived of counsel, prevented from calling and examining witnesses, and deprived of closing argument. Can that simulacrum of a trial be permitted to serve in place of the real thing? We think not.

The error was structural, and the interest of justice requires that Mack be given a new trial.

REVERSED and REMANDED.