DUNCAN, J.
**173 In these criminal cases, which were consolidated for trial, defendant waived his right to counsel and invoked his right to self-representation after being warned that, if he engaged in disruptive conduct during his jury trial, he would be removed from the courtroom, and the trial would proceed without anyone present to represent him. Despite that warning and numerous others during the trial, defendant engaged in disruptive conduct throughout the trial, and, before closing argument, he informed the trial court that he would not abide by its order prohibiting him from referring to information that had not been admitted into evidence. After confirming that defendant intended to violate its order, the trial court removed defendant from the courtroom for the remainder of the trial day.
The jury found defendant guilty of most of the charged crimes. Defendant appealed, asserting that the trial court had violated his rights under the Sixth Amendment to the United States Constitution by proceeding with the trial in his absence.[1] The Court of Appeals agreed, holding that the trial court had violated defendant's Sixth Amendment "right to representation" because "it did not secure a waiver of defendant's right to representation, it did not appoint counsel, and it did not take other measures to protect defendant's right to representation after it removed him from the courtroom." State v. Lacey , 282 Or. App 123, 127, 385 P.3d 1151 (2016). On the state's petition, this court allowed review. As explained below, we conclude that, while representing himself, defendant made a knowing and voluntary choice to be removed from the courtroom and leave the defense table empty and the trial court did not violate defendant's Sixth Amendment rights by accepting that choice.
I. HISTORICAL AND PROCEDURAL FACTS
The state brought two criminal cases against defendant, alleging multiple counts of unlawful manufacture, **174 delivery, and possession of marijuana, and criminal forfeiture. See former ORS 475.856 (2011) (manufacture); former ORS 475.860 (2011) (delivery); former ORS 475.864 (2011) (possession);[2] ORS 131.582 (criminal forfeiture). The state also alleged two sentencing enhancement facts in connection with the crimes charged in the second case. The cases, which involved a total of 32 counts, were consolidated for trial.
Before trial, defendant was represented by four different attorneys in succession. He retained the first two, each of whom withdrew *402 at his request. He then requested a court-appointed attorney. The trial court granted that request and appointed defendant's third attorney. That attorney later withdrew after defendant unsuccessfully attempted to fire him. The trial court then appointed a fourth attorney, Scales. At trial call, Scales reported that he would be ready for trial on the scheduled trial date. Defendant disagreed and then disobeyed the trial court's orders to be quiet and allow Scales to speak. The trial court held defendant in contempt for three successive violations of its orders, imposing a greater fine each time.
At a subsequent trial call held the week before the scheduled trial date, Scales reported that he was ready for trial. After that, defendant filed a motion asking the trial court for a continuance or, in the alternative, to discharge Scales. At that point, the first case had been pending for about three years, and the second case had been pending for about two years.
The trial court held a hearing on defendant's motion the day before the scheduled trial date. At the hearing, Scales asked to withdraw as defendant's counsel. Scales informed the court that it appeared that defendant, who had been filing motions on his own, wanted to represent himself. Scales also informed the court that defendant was insisting on raising a defense based on an interpretation of the Oregon Medical Marijuana Act that the trial court had rejected at a prior hearing.
**175 The trial court denied defendant's request for a continuance. It encouraged defendant to continue with Scales as his attorney, explaining that neither Scales nor defendant could raise the defense defendant wanted to raise because, as it had already ruled, the defense was based on an incorrect statutory interpretation. The trial court also advised defendant that, if he proceeded pro se and engaged in disruptive conduct, he would be removed from the courtroom and the trial would proceed without him and without defense counsel:
"THE COURT: Let me tell you another reason why [proceeding pro se ] may be a bad idea. One of the things I'm concerned about in this trial is you speaking out of turn or arguing with me after a ruling. And I told you I'm gonna hold you in contempt. And what I'm going to do or what I intend to do to enforce that is to have you removed from the courtroom. If you're not going to behave in court, then you give up the right to be in court. If you have an attorney, your attorney will still be here and can continue to advocate for you, continue to ask questions of witnesses and represent your interests. If you're representing yourself and you're removed from the court, then there's no one sitting at that table *** and we'll just go on without you. "
(Emphasis added.) The trial court repeated that warning, telling defendant that if he engaged in misconduct he would be held in jail for the rest of the trial day:
"THE COURT: *** [T]hat's what I'm going to do. I don't want you speaking out of turn. I don't want you arguing. And what I'm going to do is hold you in contempt if you do that and by making the contempt finding, invoke the sanction of having you removed from the courtroom for the rest of the day. You'll go to jail; you'll sit out the rest of the day in jail. At the end of the trial day, you will be released with an order to come back the next day for the next day of trial, and we'll try again. As long as you behave, you can stay here in court.
"* * * * *
"[DEFENDANT]: I understand.
"THE COURT: And that's why, that's yet another and very good reason why I think it's a good idea that you keep Mr. Scales as your attorney.
**176 "[DEFENDANT]: Well, we're not gonna do that. So we don't need to talk about it anymore. "
(Emphasis added.) The trial court continued to advise defendant of the risks of self-representation and, after it did, defendant chose to proceed pro se and the trial court allowed Scales to withdraw.
The case was tried over four days, during which defendant repeatedly engaged in misconduct by arguing with the trial court after it ruled and by failing to abide by its rulings.
*403 Throughout the trial, the trial court warned defendant that he would be removed from the courtroom if he continued his misconduct and the trial would proceed in his absence. On the third day of trial, the trial court admonished defendant outside of the presence of the jury, stating:
"THE COURT: Alright. The reason I asked the jury to step out is because you are arguing with me in an area that I have specifically told you you're not going to argue with me, and you keep talking after I interrupt you and tell you what my ruling is. That is contempt of court. I've told you what was gonna happen if I held you in contempt of court, and that is that you go to jail and spend the rest of the day there until we finish our proceedings for the day, and then we'll try again the next day. I really don't want to do that because there's no one sitting at your table to carry the ball while you're gone. "
(Emphasis added.)
On the fourth and final day of trial, both parties had rested their cases. The trial court and defendant then had an extended discussion about closing arguments, and defendant stated that, in his closing argument, he intended to refer to his medical marijuana card, which had not been admitted into evidence. The court ruled that defendant could not refer to the card or read it to the jury, because it was not in evidence. The court repeated its ruling numerous times in response to defendant's questions and contentions, but defendant refused to accept the court's ruling. He continuously interrupted the court and became defiant and aggressive. He disobeyed the court's orders, stated multiple times that he intended to read from the card, and challenged the court to remove him from the courtroom. In response, the **177 trial court told defendant, "I think what you're trying to do is *** to remove yourself from the trial." Defendant said he was not, but continued to state that he would use the card in closing argument.
Based on defendant's refusal to abide by its orders and his expressed intention to refer to information that was not in evidence, the trial court eventually held defendant in contempt of court and removed him from the courtroom.
After making a record of its reasons for removing defendant, the trial court proceeded with the trial. The state made its closing argument, the case was submitted to the jury, and the jury returned its verdict, finding defendant guilty on all but four counts. Immediately thereafter, the trial court held a trial on the two sentencing enhancement facts, and the jury found both of the sentencing enhancement facts. On a later date, defendant appeared with retained counsel for sentencing.
Defendant appealed, asserting that the trial court had violated his Sixth Amendment "right to representation." The Court of Appeals agreed, holding that, although defendant had waived his right to counsel before trial and had forfeited his rights to be present and self-representation during trial, he had not forfeited his "right to representation." Lacey , 282 Or. App. at 127, 385 P.3d 1151. In doing so, the Court of Appeals relied on its decision in State v. Menefee , 268 Or. App. 154, 341 P.3d 229 (2014), in which it had ruled that, although a pro se defendant who acts out at trial " 'may forfeit the right to be present and the right to self-representation in the proceeding, the defendant does not also forfeit the right to any representation at trial,' " and, therefore,
" 'after a trial court has removed a pro se defendant for his or her misconduct, the trial court cannot proceed in the defendant's absence unless and until the trial court has either secured the defendant's waiver of his or her right to representation at trial or has taken some other course of action that protects the defendant's right to representation, which may include the appointment of counsel.' "
Lacey , 282 Or. App. at 126, 385 P.3d 1151 (quoting Menefee , 268 Or. App. at 184-85, 341 P.3d 229 ). Applying that rule in this case, the Court of Appeals reversed the trial court's judgment, reasoning that
**178 "after defendant forfeited his rights to be present and self-representation, the trial court continued the trial in defendant's absence without complying with the procedure set forth in Menefee . The court did *404 not secure a waiver of defendant's right to representation, it did not appoint counsel, and it did not take other measures to protect defendant's right to representation after it removed him from the courtroom. As a result, defendant was deprived both of closing argument and the ability to participate in the trial on the sentencing enhancement factors."
Lacey , 282 Or. App. at 127, 385 P.3d 1151.
The Court of Appeals explained that the primary rationale for the approach required by Menefee "is to protect the structural integrity of our criminal justice system." Lacey , 282 Or.App. at 126, 385 P.3d 1151. Specifically, the Court of Appeals explained,
"Where a criminal case is tried against a vacant defense table, the adversarial process has broken down, and cannot ensure that the convictions rendered are fair and reliable. Our system strives to be fair, even to those who, like the defendant in Menefee and defendant here, work the hardest to undermine it. And the Sixth Amendment imposes upon us, as courts, an obligation to do what we can to prevent them from succeeding. This does not mean that a court has to tolerate an obstreperous defendant's presence in the courtroom, but it does mean that the court may have to appoint counsel for a defendant who previously elected to proceed pro se , notwithstanding the awkwardness of doing so mid-trial."
Id . at 126-27, 385 P.3d 1151 (citation omitted).
Judge Garrett dissented, stating that the trial court did not err by proceeding with the trial in defendant's absence because "defendant had already waived his right to representation by counsel at the beginning of trial" and "[t]hen, exercising his right of self-representation, defendant chose to engage in misconduct with full knowledge that the consequence would be his removal from court and the continuation of the trial without anyone to represent him." Id . at 133, 385 P.3d 1151 (Garrett, J., dissenting). Regarding the majority's concern about "the danger of an empty counsel table," Judge Garrett observed that a defendant's right to **179 self-representation "presumes that a defendant's right to control his own representation is superior to the state's more generalized interest in ensuring that defendants are vigorously and competently represented by counsel." Id . at 140 n. 3, 385 P.3d 1151.
The state petitioned for review, asking this court to address what a trial court should do when a pro se defendant is removed from the courtroom for misconduct during trial. The state noted that the question was an open one in this court and that other jurisdictions are divided on it.[3] We allowed review.
II. PARTIES' ARGUMENTS ON REVIEW
On review, the state argues that the trial court did not err by proceeding with the trial in defendant's absence. Specifically, the state argues that, if a defendant "validly waives his right to counsel, and then, while representing himself, engages in misconduct that waives his right to be present, the court may continue the trial in his absence without obtaining a second waiver of the right to counsel or appointing new counsel." The state further argues that, even if a second waiver of the right to counsel is required, in this case, defendant waived that right through his misconduct.
In response, defendant argues, "The absence of anyone to represent the defendant during trial offends the notion of an adversarial judicial system and cannot yield a fair trial." "Thus," he further argues, "if a defendant waives his right to counsel, and invokes his right to self-representation, engaging in misconduct at trial does not forfeit his constitutional right *** to a defense presence ***." (Emphasis in original.) According to defendant, "when a pro se defendant is removed from the courtroom for misconduct, thus forfeiting his right to presence and right to self-representation, *405 the court must find a way to protect the defendant's constitutional right to counsel." (Footnote omitted.) Therefore, defendant concludes, the trial court in **180 this case erred because it "did not secure a waiver of defendant's right to representation, it did not appoint counsel, and it did not take other measures to protect defendant's right to representation after it removed him from the courtroom."
III. ANALYSIS
The issue in this case implicates three Sixth Amendment rights: the right to counsel, the right to self-representation, and the right to be present during court proceedings.[4] We begin with a brief discussion of those rights.
A. Sixth Amendment Rights
1. Right to Counsel
The Sixth Amendment expressly guarantees criminal defendants the right to counsel. It provides, "In all criminal prosecutions, the accused shall enjoy the right *** to have the Assistance of Counsel for his defence." The right to counsel is a "fundamental" right. Gideon v. Wainwright , 372 U.S. 335, 342-43, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). It is intended to ensure the fairness of criminal proceedings. Id. at 344, 83 S.Ct. 792. Criminal proceedings are adversarial, and in order to function properly, both the state and the defendant need to be able to make their cases. Herring v. New York , 422 U.S. 853, 862, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) ("The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free.").
2. Right to Self-Representation
Although the right to counsel serves to protect the fairness of criminal proceedings, a defendant can choose **181 to proceed without counsel. That is because, in addition to guaranteeing the right to counsel, the Sixth Amendment guarantees the right to self-representation, as the Supreme Court held in Faretta v. California, 422 U.S. 806, 832, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The Sixth Amendment does not explicitly state the right to self-representation, but, as the Court explained in Faretta , the right is "necessarily implied" by the text of the amendment, which provides that, in all criminal prosecutions, "the accused" shall enjoy several rights, including the rights to notice, confrontation, and compulsory process. Id . at 819, 95 S.Ct. 2525. Thus, the amendment guarantees "the accused" the "right in an adversary criminal trial to make a defense as we know it." Id . at 818, 95 S.Ct. 2525. It "does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense," and that is because "it is [the accused] who suffers the consequences if the defense fails." Id . at 819-20, 95 S.Ct. 2525.
In Faretta , the Supreme Court acknowledged that its conclusion could be seen "to cut against the grain of [its] decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel," given that the "basic thesis of those decisions is that the help of a lawyer is essential to assure the defendant a fair trial." Id . at 832-33, 95 S.Ct. 2525 (citing, inter alia , Gideon , 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 ). "But," the Court explained, "it is one thing to hold that every defendant, rich or poor, has the right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want." Id . at 833, 95 S.Ct. 2525 ; see also id. at 834, 95 S.Ct. 2525 ("[W]here the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and *406 experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him."). The Court granted that, "in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts," but the Court prioritized a defendant's autonomy, holding that, although a defendant "may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the **182 individual which is the lifeblood of the law." Id . at 834, 95 S.Ct. 2525 (internal quotation marks and citation omitted).[5]
In exercising the right to self-representation at trial, a defendant might employ a strategy that does not fully challenge the state's case. A pro se defendant may lack the legal knowledge and skills necessary to effectively present his or her case. See Powell v. Alabama , 287 U.S. 45, 69, 53 S.Ct. 55, 77 L Ed 158 (1932) (observing that "even the intelligent and educated layman" is unlikely to be able "to prepare his defense, even though he had a perfect one"). Or a pro se defendant may refuse to participate or be present during a trial. Courts have held that such refusals are permissible and that a trial court is not required to appoint counsel for a pro se defendant who chooses not to participate or be present during trial. Indeed, as the Rhode Island Supreme Court observed in State v. Eddy , 68 A.3d 1089, 1105 (R.I. 2013), courts "are almost uniform in holding that a trial judge is not constitutionally required to appoint counsel" for a pro se defendant who voluntary absents himself from trial.
Eddy itself is illustrative. In Eddy , the defendant validly waived his right to counsel and elected to represent himself during his jury trial. After the jury was sworn, the defendant, who was in custody, asked to leave the courtroom. The trial court engaged in a detailed colloquy with the defendant and then allowed him to leave. The trial continued without the defendant, and the jury convicted him. The defendant appealed, arguing, among other things, that the trial court had violated his rights to counsel and due process by proceeding with the trial in his absence, without appointing counsel. 68 A.3d at 1103-04. The Eddy court rejected that argument, holding that the trial court was not **183 required to appoint counsel to replace the defendant because he had made an informed and voluntary choice not to attend his trial. Id . at 1106-08. Although the defendant's absence resulted in an empty defense table and, consequently, was inconsistent with the active partisan advocacy that is intended to ensure the fairness of trials, the Eddy court held that the defendant's voluntary decision to absent himself was "an exercise of his self-representation," which the trial court was required to accept. Id . at 1108 ; id . at 1106 (reasoning that, to the extent the defendant "faced trial without advantages guaranteed by the Sixth Amendment, that was not by the trial judge's imposition, but by [his] own informed choice, which the trial court was bound to respect" (internal quotation marks omitted) ).[6] *407 The Eddy court's conclusion is consistent with the conclusions of other courts. For example, in Torres v. United States , 140 F.3d 392 (2nd Cir.), cert. den. , 525 U.S. 1042, 119 S.Ct. 595, 142 L.Ed.2d 537 (1998), the Second Circuit held that the trial court did not violate the defendant's Sixth Amendment right to counsel by allowing her to proceed pro se , despite her intention, which she stated repeatedly and unequivocally from the outset of the prosecution, to not participate in the proceedings. Id . at 402-03. The defendant in Torres was a self-described "freedom fighter," and she regarded the prosecution as "illegal." Id . at 395-96. After engaging in a courtroom protest at the outset of jury selection, she insisted on leaving the courtroom. The trial court allowed her to leave and informed her that she could return whenever she wanted. The court also set up an audio connection in an adjoining room, so the defendant and her legal advisors could monitor the proceedings. Given the defendant's statements and behavior, the Second Circuit held that the trial court had "properly respected [the defendant's] decision" on how to represent herself. **184 Id . at 402-03 ; see also Clark v. Perez , 510 F.3d 382, 396 (2d Cir.), cert. den. , 555 U.S. 823, 129 S.Ct. 130, 172 L.Ed.2d 37 (2008) (holding, on facts similar to those in Torres , that trial court did not err in allowing pro se defendant to refuse to attend trial).
Although a defendant has the right to proceed pro se and a pro se defendant must be allowed to control the defense, there are limits to a defendant's right to self-representation. In Faretta , the Supreme Court noted that, if a pro se defendant engages in misconduct during the trial, the trial court can terminate the defendant's self-representation and appoint counsel, even over the defendant's objection. Specifically, the Court stated:
"We are told that many criminal defendants representing themselves may use the courtroom for deliberate disruption of their trials. But the right of self-representation has been recognized from our beginnings by federal law and by most of the States, and no such result has thereby occurred. Moreover, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. Of course, a State may-even over objection by the accused-appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary."
Faretta, 422 U.S. at 834 n. 46, 95 S.Ct. 2525 (citation omitted; emphasis added).
Relying on Faretta , trial courts frequently appoint standby counsel, and appellate courts recommend such appointments. See People v. Cohn , 160 P.3d 336, 342-43 (Colo. App. 2007) (citing cases). But as long as a defendant is proceeding pro se , the defendant "must be allowed to control the organization and content of his own defense." McKaskle , 465 U.S. at 174, 104 S.Ct. 944.
3. The Right to be Present During Court Proceedings
In addition to having the right to representation, either through counsel or self-representation, a defendant also has the right to be present during court proceedings. The right derives from the Sixth Amendment's Confrontation **185 Clause, and is "one of the most basic rights" guaranteed by the clause. Illinois v. Allen , 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353, reh'g den. , 398 U.S. 915, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970). Nevertheless, a defendant may lose the right to be present either by affirmatively waiving it or by engaging in misconduct. Id . at 342-43, 90 S.Ct. 1057. Specifically as to misconduct, a defendant may lose the right to be present "if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." Id. (footnote omitted).
B. Whether the Trial Court Violated Defendant's Sixth Amendment Rights
In this case, defendant does not dispute that, at the hearing the day before trial, he knowingly and voluntarily waived his right *408 to counsel. Nor does he dispute that, during trial, he knowingly and voluntarily engaged in conduct for which the trial court permissibly found him in contempt of court and removed him from the courtroom for the remainder of the day. He argues only that, after removing him from the courtroom for misconduct, the trial court had to appoint counsel or take other steps to ensure that he was represented. He contends that, despite his waiver and misconduct, he retained a "right of representation," and, therefore, the trial court could not proceed with the trial in his absence unless and until it either secured a waiver of that right or appointed counsel or took other measures to protect that right.
We recognize the importance of a defense presence at trial. However, in keeping with Faretta , we also recognize that a defendant has the right to self-representation, which is based on respect for the defendant's autonomy, and that, when exercising that right, a defendant can choose not to participate in, or even attend, trial. Based on the circumstances of this case, we conclude that that is what defendant did. The trial court found that defendant was trying to get himself removed from the courtroom, and the record supports that finding. The trial court clearly and repeatedly warned defendant that, if he insisted that he would violate the court's order prohibiting him from referring to **186 information that had not been admitted into evidence, he would be removed from the courtroom and no one would be present to represent him. Despite those warnings, defendant insisted that he would violate the order. By doing so, he made a knowing and voluntary choice to be removed from the courtroom and leave the defense table empty.
If defendant had simply walked out of the courtroom, there would be no question that the trial court could proceed with the trial in defendant's absence. A defendant cannot force a trial court to appoint counsel or to suspend a trial simply by removing himself from the courtroom. Nor can a defendant do so by having himself removed from the courtroom. When a defendant waives the right to counsel knowing that, if he is removed from the courtroom for misconduct, no one will be present to represent him, and then, while representing himself, intentionally engages in misconduct that he knows will result in his removal, the defendant is choosing to not to participate in or be present at trial. In that circumstance, a trial court can accept the defendant's choice.[7] The trial court is not required to appoint counsel or take other measures to provide a defense presence. A trial court may do so, and it may be advisable for it to do so, but it is not required to do so.[8]
*409 **187 In holding otherwise, the Court of Appeals relied on its decision in Menefee . But it does not appear that the defendant in Menefee received warnings like those defendant received in this case. Specifically, it does not appear that the defendant was warned that, if he chose to exercise his right to self-representation and then engaged in misconduct, he would be removed from the courtroom and the trial would continue without anyone present to represent him. Thus, in Menefee , the defendant's waiver of the right to counsel may not have been knowingly made, in that he may not have been aware of a critical consequence of the waiver. Therefore, the trial court may not have been able to rely on that waiver after it removed the defendant from the courtroom. In addition, it does not appear that defendant in Menefee was warned that the type of conduct he engaged in could result in his removal from the courtroom. Given the lack of warnings about both the consequences of the waiver of the right to counsel and the consequences of the defendant's conduct, it made sense for the Court of Appeals to rule that a "trial court cannot proceed in the defendant's absence unless and until [it] has either secured the defendant's waiver of his or her right to representation at trial or has taken some other course of action that protects the defendant's right to representation ***." Menefee , 268 Or. App. at 185, 341 P.3d 229.
Understood in light of its facts, Menefee stands for the proposition that a trial court cannot proceed with an empty defense table unless the defendant has made a knowing and voluntary choice to leave it empty. But it does not establish that a defendant cannot make that choice by doing **188 what defendant did in this case. Indeed, in Menefee , the Court of Appeals noted that "[t]he right to representation, like any constitutional right, may be waived, but that waiver must be knowing and intelligent." 268 Or. App. at 186, 341 P.3d 229. And the Court of Appeals suggested that the waiver could be through misconduct after warnings, observing that
"some state and federal courts have held that a defendant may impliedly waive his or her Sixth Amendment right to counsel by engaging in repeated misconduct in the attorney-client relationship if the defendant has received an advance warning that a repetition of behavior that amounts to misconduct will result in the defendant waiving the right to counsel."
Id. (citing State v. Langley , 351 Or. 652, 669-70, 273 P.3d 901 (2012) ).
Several courts have held that a trial court that removes a pro se defendant from the courtroom for misconduct cannot continue the trial without either appointing counsel or otherwise arranging for the defendant's representation (for example, by having the defendant participate from another location by videoconferencing). For example, in People v. Carroll , 140 Cal. App. 3d 135, 141, 189 Cal.Rptr. 327, 330, cert. den. , 464 U.S. 820, 104 S.Ct. 83, 78 L.Ed.2d 93 (1983), the California Court of Appeal held that the trial court had erred by proceeding with a trial after removing the pro se defendant for misconduct, reasoning that, "[b]ecause defendant represented himself, his removal from the courtroom deprived him not only of his own presence, but of legal representation," and that offended "the most fundamental idea of due process of law." And, relying on Carroll , in United States v. Mack , 362 F.3d 597, 601 (9th Cir. 2004), the Ninth Circuit held that the trial court had erred because it had removed the defendant who had been acting "as his own counsel and nobody stepped in to fill the gap," which "effectively [left] him without representation."
But Carroll and Mack are distinguishable from this case, because it does not appear that the defendants in those cases were warned, prior to waiving their right to counsel, that, if they proceeded pro se and were removed from the courtroom for misconduct, their trials would continue **189 without anyone *410 present to represent them. Thus, the defendants' waivers of counsel may not have been made with the knowledge of a critical consequence, and, therefore, the trial courts may not have been able to rely on the waivers after removing the defendants.
To be sure, the defendants in Carroll and Mack were warned during trial that, if they continued to engage in specific misconduct, they would be removed from their courtrooms and their trials would continue without anyone present to represent them. Thus, their misconduct could be characterized as knowing and voluntary. Consequently, Carroll and Mack can be read as holding that, if a trial court removes a pro se defendant from the courtroom for voluntarily engaging in conduct that he knew would result in his removal and leave the defense table empty, the trial court cannot proceed with the trial unless and until it either appoints counsel or takes other steps to ensure that the defendant is represented. To the extent that those cases so hold, they are at odds with the right of a pro se defendant to choose whether and how to defend himself. After all, a pro se defendant can choose to plead guilty or no contest to the charges against him, if the choice is knowingly and voluntarily made. Given the deference afforded to a defendant's autonomy, we conclude that a trial court is not prohibited from proceeding with a trial if a pro se defendant makes a voluntary choice to engage in conduct that he knows will result in his removal and leave him without anyone present to represent him. Therefore, the trial court in this case did not err by proceeding with the trial in defendant's absence.
The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

The Sixth Amendment provides, in part:
"In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

Former ORS 475.856 (2011), former ORS 475.860 (2011), and former ORS 475.864 (2011) have since been repealed. Or. Laws 2017, ch. 21, § 126.

In its decision in this case, the Court of Appeals majority stated: "Given that the state and federal courts across the country are fractured on this complex issue, we echo the sentiments of the Second Circuit: 'Frankly, more guidance from the Supreme Court would be helpful.' " Lacey , 282 Or. App. at 129 n. 1, 385 P.3d 1151 (quoting Davis v. Grant , 532 F.3d 132, 140 (2d Cir. 2008), cert. den. , 555 U.S. 1176, 129 S.Ct. 1312, 173 L.Ed.2d 595 (2009) ).

Defendant contends that the trial court violated his rights under both the Sixth Amendment and Article I, section 11, of the Oregon Constitution. But defendant did not raise an Article I, section 11, argument in the Court of Appeals, and we allowed review on the state's petition, which raised only the Sixth Amendment issue. Therefore, we decline to address defendant's Article I, section 11, argument. See State v. Heilman , 339 Or. 661, 667 n. 3, 125 P.3d 728 (2005) (declining to reach defendant's state constitutional argument on review in part because defendant did not develop the argument in the Court of Appeals).

See Faretta , 422 U.S. at 821, 95 S.Ct. 2525 (stating that "unless the accused has acquiesced in [representation by counsel], the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense" (emphasis in original) ); see also Weaver v. Massachusetts , --- U.S. ----, 137 S.Ct. 1899, 1908, 198 L.Ed.2d 420 (2017) (observing that the right to self-representation is "based on the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty"); McKaskle v. Wiggins , 465 U.S. 168, 176-77, 104 S.Ct. 944, 79 L.Ed.2d 122, reh'g den. , 465 U.S. 1112, 104 S.Ct. 1620, 80 L.Ed.2d 148 (1984) ("The right to appear pro se exists to affirm the dignity and autonomy of the accused and to allow the presentation of what may, at least occasionally, be the accused's best possible defense.").

See also United States v. Stanley , 739 F.3d 633, 649-50 (11th Cir.), cert. den., 572 U.S. 1126, 134 S.Ct. 2317, 189 L.Ed.2d 195 (2014) (holding that trial court did not err in proceeding with trial after pro se defendant absconded, because defendant's flight alone did not indicate unambiguously a desire to revoke his valid Sixth Amendment waiver and reinstate counsel); People v. Brante , 232 P.3d 204, 208-09 (Colo App 2009) ("[T]he trial court did not violate [the defendant's] Sixth Amendment right to counsel by declining sua sponte to appoint advisory counsel to take over the defense in his absence."); State v. Worthy , 583 N.W.2d 270, 279 (Minn 1998) (holding that trial court did not err in failing to reappoint defendants' dismissed counsel after defendants validly waived their rights to counsel and to be present).

The defendant's choice to engage in the conduct must be voluntarily and knowingly made. Conditions, including a defendant's mental health issues, could affect a defendant's ability to make such a choice, but there is no evidence of any such conditions in this case.

Under Faretta , if a pro se defendant engages in misconduct, a trial court can terminate his self-representation and appoint counsel, even over the defendant's objection. Consequently, as many courts have observed, the appointment of standby counsel is advisable because, if a pro se defendant loses his right to self-representation, standby counsel can assume the representation. See, e.g. , Cohn , 160 P.3d at 342-43 (citing, inter alia , People v. Carroll , 140 Cal. App. 3d 135, 189 Cal.Rptr. 327, cert. den. , 464 U.S. 820, 104 S.Ct. 83, 78 L.Ed.2d 93 (1983) ; United States v. Mack , 362 F.3d 597 (9th Cir. 2004) ; United States v. Pina , 844 F.2d 1, 15 (1st Cir. 1988) ("Removal of a defendant from the courtroom is more difficult when the defendant is acting pro se . We thus encourage a trial judge to employ his or her wisdom to appoint standby counsel whenever a defendant refuses or discharges counsel."); Jones v. State , 449 So.2d 253, 257 (Fla), cert. den. , 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984) (observing that, when trial court was faced with an "obstreperous defendant who might well attempt to disrupt and obstruct the trial proceedings," it was prudent to appoint standby counsel, even over defendant's objection, "to represent defendant in the event it became necessary ... [to remove] him from the courtroom" (omission and alteration in Cohn ) ) ); see also Lacey , 282 Or. App. at 130 n. 2, 385 P.3d 1151 (recommending that trial courts advise defendants that, if they proceed pro se and are removed from the courtroom for misconduct, their rights to self-representation will be terminated and counsel will be appointed). Alternatively, a trial court can stop short of terminating the defendant's right to self-representation and instead allow the defendant to continue to participate remotely by arranging for the defendant to monitor and respond to what happens in the courtroom. See, e.g. , Torres , 140 F.3d at 402-03 ; United States v. Jennings , 855 F.Supp. 1427, 1445-46 (MD Pa 1994), aff'd without op. , 61 F.3d 897 (3d Cir. 1995) (affirming conviction of pro se defendant who was removed from courtroom for misconduct, but was able to listen to the proceedings from another location and transmit messages to the court); State v. DeWeese , 117 Wash. 2d 369, 381, 816 P.2d 1 (1991) (unpublished) (holding that trial court did not err by proceeding with trial after removing pro se defendant, who was placed in an office where he could monitor the proceedings and invited to return to cross-examine witnesses). A trial court may choose to do either of those things in order to protect the interests of the defendant, state, courts, and public in fair trials and accurate verdicts.